**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
*ELECTRONICALLY FILED*

| | | |
|---|---|---|
| GLENNA McCOY and DIETRICH | ) | |
| GRAINGER, individually, and on behalf | ) | |
| of all others similarly situated, | ) | CASE NO. 1:17-cv-54-GNS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | COMPLAINT – CLASS ACTION AND |
| vs. | ) | COLLECTIVE ACTION UNDER THE |
| | ) | FAIR LABORS STANDARDS ACT |
| ADAPTIVE ENTERPRISES, LLC, | ) | |
| MICHAEL MONTGOMERY, and | ) | |
| JUSTIN HURDLE | ) | |
| | ) | |
| Defendants. | ) | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Come Plaintiffs Glenna McCoy ("McCoy") and Dietrich Grainger ("Grainger") (collectively

"Plaintiffs"), on behalf of themselves and all others similarly situated (collectively the "Classes"

and/or "Class Members"), and for their Collective and Class Action Complaint against Defendants

Adaptive Enterprises, LLC ("Adaptive"), Michael Montgomery ("Montgomery"), and Justin Hurdle

("Hurdle") (collectively "Defendants") allege the following:

### I.  OVERVIEW

1.      This is a collective and class action brought by Plaintiffs on behalf of themselves and

all similarly situated current and former van drivers (as defined below, and who will also be referred

to "Collective Class Members" and "Class Action Class Members") who worked at Adaptive

Enterprises, LLC, at any time during the five (5) year period preceding the filing of this Collective

and Class Action Complaint.  Plaintiffs also seek a declaratory judgment under 28 U.S.C. §2201 and

equitable and other relief available to prevent and remedy Defendants harmful and illegal conduct as set forth herein.

2.     During the Recovery Periods as defined below in Counts One, Two, Three, Four, and Five, Plaintiffs and Class Members who worked for Defendants as van drivers are not and were not: a) paid all compensation for their work that had been promised by Defendants; and/or b) paid for all hours worked as required by the Fair Labor Standards Act ("FLSA"), including minimum wage and overtime pay. Upon information and belief, Defendants' policies, practices and procedures alleged in the preceding sentence still continue at the present time.

3.     During the Recovery Periods as defined below in Counts One, Two, Three and Four, Plaintiffs and Class Members were intentionally misclassified as "independent contractors" by Defendants as part of an illegal scheme designed to: a) deprive them of lawful minimum wages and overtime pay as required by the FLSA; b) deprive them of workers' compensation protection provided by the employer as mandated by Kentucky law; and c) avoid payment of Social Security and Medicare taxes mandated by the Federal Insurance Contribution Act ("FICA"), as well as federal ("FUTA") and state ("SUTA") unemployment insurance contributions mandated by federal and state laws.

4.     Defendants' conduct as alleged in Paragraph 2 and 3 constitutes willful violations of the FLSA and/or Kentucky state law, and federal and state tax laws.

5.     Plaintiffs and Class Members seek a declaratory judgement against Defendants declaring that they are "employees," and that Defendants are "employers," for purposes of the FLSA,

federal and state tax laws, and Kentucky workers' compensation laws, and for an order compelling Defendants to comply with all such laws.

6.     Plaintiffs and Class Members are similarly situated under the FLSA, specifically 29 U.S.C. §216(b), and/or Federal Rule of Civil Procedure 23, as Plaintiffs and Class Members commonly suffered wage, compensation, remuneration and monetary losses as a result of Defendants' uniform and unlawful policies, practices and procedures.

## II.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 and §1343. This Court has supplemental jurisdiction over the Kentucky state law claims pursuant to 28 U.S.C. §1367.

8.     This Court has subject matter jurisdiction to issue a declaratory judgment under 28 U.S.C. §2201 because an actual controversy exists between the parties, as set out in this Complaint.

9.     Venue is proper in the Western District of Kentucky under 28 U.S.C. §1391 because Defendants' principal place of business is located in this District and a substantial portion of the events forming the basis of this lawsuit occurred in this District.

## III.     PARTIES

10.     McCoy is a resident and citizen of Bowling Green, Kentucky. McCoy's Consent form to join this lawsuit is attached as Exhibit 1. McCoy worked for Defendants as a driver from approximately July 5, 2016, through December 13, 2016. During her employment, McCoy worked hours for which she was not properly compensated, including being denied overtime compensation.

11.     Grainger is a resident and citizen of Bowling Green, Kentucky. Grainger's Consent form to join this lawsuit is attached as <u>Exhibit 2.</u> Grainger worked for Defendants as a van driver from approximately December 15, 2015, through November 18, 2016. During his employment, Grainger worked hours for which he was not properly compensated including being denied minimum wages, and possibly overtime compensation.

12.     Defendant Adaptive is a Kentucky limited liability company. Adaptive's principal place of business is located at 5653 Morgantown Road, Bowling Green, KY 42101. Adaptive's agent for service of process is Defendant Montgomery.

13.     Adaptive provides transportation services to Medicare and Medicaid patients who need transportation to healthcare providers located in Kentucky and other states. Upon information and belief, Adaptive contracts with L.K.L.P County Action Council, which is a private, non-profit corporation established by the Kentucky General Assembly to provide transportation services for Medicaid, Medicare and other patients.

14.     Montgomery is a resident and citizen of Kentucky.

15.     Montgomery is the owner and managing member of Adaptive.

16.     Montgomery is involved in the day to day operations of Adaptive.

17.     Montgomery is, and throughout the recovery periods applicable to this action was, involved in the process of creating, implementing, and enforcing the policies and practices utilized in Adaptive's business operations, including the misclassification of delivery drivers as "independent contractors" in order to: deprive Plaintiffs and Class Members of the minimum wages and overtime pay required by the FLSA; pass Defendants' legal obligations off on Plaintiffs and Class Members to

pay for worker's compensation coverage; and to avoid paying Social Security and Medicare taxes mandated by FICA, as well as federal and state unemployment insurance contributions required by law.

18. Hurdle is a resident and citizen of Kentucky.

19. Hurdle is the operations manager of Adaptive.

20. Hurdle is involved in the day-to-day operations of Adaptive, including hiring, firing, and implementing and enforcing Defendants' illegal timekeeping policies and practices which deprived Plaintiffs and the Class Members of pay for all hours worked, including minimum wages and overtime pay.

21. Throughout the Recovery Periods applicable to this action, Hurdle was responsible for calculating the pay due Class Members, and did so by implementing the Defendants' policy and practice of only paying Class Members for the time spent transporting patients, and excluding all other compensable time worked.

22. Hurdle is, and throughout the Recovery Periods applicable to this action was, involved in the process of implementing and enforcing the policies and practices utilized in Adaptive's business operations, including the misclassification of delivery drivers as "independent contractors" in order to: deprive Plaintiffs and Class Members of the minimum wages and overtime pay required by the FLSA; pass Defendants' legal obligations off on Plaintiffs and Class Members to pay for workers' compensation coverage; and avoid paying Social Security and Medicare taxes mandated by FICA, as well as federal and state unemployment insurance contributions required by law.

# IV.    COVERAGE UNDER THE FLSA

23.    Adaptive was an "employer" of McCoy throughout her employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

24.    Adaptive was an "employer" of Grainger throughout his employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

25.    Adaptive was an "employer" of the Class Members throughout their employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

26.    Montgomery was an "employer" of McCoy throughout her employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

27.    Montgomery was an "employer" of Grainger throughout his employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

28.    Montgomery was an "employer" of the Class Members throughout their employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

29.    Hurdle was an "employer" of McCoy throughout her employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

30.    Hurdle was an "employer" of Grainger throughout his employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

31.    Hurdle was an "employer" of the Class Members throughout their employment with Adaptive within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

32.    At all material times, Adaptive has constituted an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of §3(s)(1) of the FLSA because it has

had employees engaged in commerce and made an annual gross income of not less than $500,000. 29 U.S.C. §203(s)(1).

33.    McCoy was an "employee" of Adaptive within the meaning of §3(e)(1) of the FLSA throughout her employment with Adaptive.  29 U.S.C. §203(e)(1).

34.    McCoy was an "employee" of Montgomery within the meaning of §3(e)(1) of the FLSA throughout her employment with Montgomery.  29 U.S.C. §203(e)(1).

35.    McCoy was an "employee" of Hurdle within the meaning of §3(e)(1) of the FLSA throughout her employment with Hurdle.  29 U.S.C. §203(e)(1).

36.    Grainger was an "employee" of Adaptive within the meaning of §3(e)(1) of the FLSA throughout his employment with Adaptive.  29 U.S.C. §203(e)(1).

37.    Grainger was an "employee" of Montgomery within the meaning of §3(e)(1) of the FLSA throughout his employment with Montgomery.  29 U.S.C. §203(e)(1).

38.    Grainger was an "employee" of Hurdle within the meaning of §3(e)(1) of the FLSA throughout his employment with Hurdle.  29 U.S.C. §203(e)(1).

39.    The Class Members were "employees" of Adaptive within the meaning of §3(e)(1) of the FLSA throughout their employment with Adaptive.  29 U.S.C. §203(e)(1).

40.    The Class Members were "employees" of Montgomery within the meaning of §3(e)(1) of the FLSA throughout their employment with Montgomery.  29 U.S.C. §203(e)(1).

41.    The Class Members were "employees" of Hurdle within the meaning of §3(e)(1) of the FLSA throughout their employment with Hurdle.  29 U.S.C. §203(e)(1).

42.     At all material times, the FLSA's pay, minimum wage and overtime provisions set forth in §6 and §7, respectively, applied to Defendants and to van drivers such as Plaintiffs and Class Members.  29 U.S.C. §206 and §207.

## V.     FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFFS AND ALL CLASS MEMBERS

**A.     At All Material Times the Relationship Between Defendants and the Class Members Was that of Employer and Employee, Not Independent Contractor**

43.     Montgomery owns and is actively involved in the operation of Adaptive.

44.     Montgomery exercised day-to-day control over the work of the Plaintiffs and Class Members by setting and/or approving wages, work assignments, schedules, and hiring and firing.

45.     Hurdle exercised day-to-day operational control over the work of the Plaintiffs and Class Members by including hiring, firing, and implementing and enforcing Defendants' illegal timekeeping policies and practices.

46.     Adaptive provides transportation services for Medicare and Medicaid patients who require transportation to and from doctors' offices, hospitals, and other health care providers.

47.     Adaptive also provides transportation services in the nature of a "taxi" service, although this is a small portion of the services it offers.

48.     Adaptive owns and maintains a fleet of Dodge Caravans which its van drivers operate to transport patients to and from medical appointments with health care providers.

49.     Adaptive's vans are designed and used for transporting eight (8) or fewer passengers, and have a gross vehicle weight rating of less than ten thousand pounds (10,000).

50.     At all material times, Montgomery exercised supervisory authority and day-to-day control over the Plaintiffs and the Class Members.

51.     Montgomery used his position and authority over Adaptive to devise, promulgate and enforce a policy and practice of misclassifying van drivers hired to work at Adaptive as "independent contractors" so that he could avoid paying them their lawful minimum wages and overtime pay, avoid providing workers' compensation coverage as required by law, and avoid paying federal and state taxes as required by law.

52.     As operations manager, Hurdle used his position and authority to implement and enforce Defendants' policy and practice of misclassifying van drivers as "independent contractors."

53.     When Defendants hired them, Defendants required Plaintiffs and Class Members to sign a document called an "Independent Contractor Agreement" purporting to characterize their working relationship as an "independent contractor."

54.     Defendants required Plaintiffs and Class Members to sign an "Independent Contractor Agreement" as a subterfuge to circumvent compliance with wage and hour laws, federal and state tax laws, and state law requiring that Defendants provide workers' compensation coverage.

55.     No aspect of the Plaintiffs' and Class Members' terms and conditions of employment while they worked for Defendants supports the existence of an "independent contractor," as opposed to an "employer-employee," relationship.

56.     During their employment as van drivers with Defendants, neither Plaintiffs nor the Class Members operated their own businesses which provided transportation services independent of or similar to that provided by Defendants.

57. Throughout their employment, Defendants owned the vans which Plaintiffs and the Class Members operated, performed all maintenance and repairs on the vans, insured the vans, and furnished gasoline for the vans.

58. Plaintiffs and Class Members did not use or furnish their own equipment (such as vans or other vehicles) at any time during their employment with Defendants.

59. Throughout their employment, Defendants paid Plaintiffs and the Class Members an hourly rate of pay for their work as van drivers (although Defendants did not pay them for all hours they worked).

60. Plaintiffs and Class Members were paid on regular paydays each month, rather than upon the completion of a particular job.

61. Plaintiffs and Class Members were employed for an indefinite period of time, rather than for a fixed time or until completion of a job.

62. Throughout their employment with Defendants, Plaintiffs and Class Members had no opportunity to make a profit, or incur a loss, like an operator of an independent business would.

63. Plaintiffs and Class Members had no opportunity to negotiate or set the prices charged for transportation services, which was established solely by Defendants.

64. The services performed by Plaintiffs and Class Members as van drivers were an integral part of Defendants' transportation business.

65. The work performed by Plaintiffs and Class Members was not specialized, and Defendants did not require that they possess special skills or a particular educational level as a condition to hiring them.

66. Defendants provided a fixed work location for Plaintiffs and Class Members to use picking up and dropping off Defendants' vans each day, turning in their delivery logs, and bringing the vans in for servicing.

67. The transportation manifests which Defendants provided daily to the Plaintiffs and Class Members told them where to go, who to pick up and drop off, and when.

68. The transportation manifests which Defendants provided daily to the Plaintiffs and Class Members required them to work full days with no opportunity to work elsewhere.

69. The vast majority of Class Members who worked, and who still work, for Defendants worked full time, with no opportunity to work elsewhere.

70. Defendants controlled, and still control, all material aspects of the Class Members' employment.

**B.      Defendants Failed to Pay for All Compensable Hours Worked by Class Members**

71. As a matter of established policy and practice throughout the Recovery Periods, Defendants only paid Plaintiffs and Class Members for the estimated time it took to transport patients to and from their appointments with health care providers.

72. As a result of Defendants' policy and practice of compensating van drivers only for time spent actually driving patients to and from appointments, Defendants failed and refused to pay Plaintiffs and Class Members for time spent performing the following compensable work:

a.      Waiting for patients after dropping them off at a medical or other health care facility;

b.      Assisting patients with disabilities to enter, or leave, a medical or other health care facility;

c.      Helping patients fill out medical paperwork required for treatment;

d.      Time spent at a patient's home waiting on a caregiver to arrive so the patient can be left;

e.      Time spent driving from Defendants' office location to pick up the first patient;

f.      Time spent driving to Defendants' office location after dropping off the last patient;

g.      Waiting at Defendants' office location for their assigned van to be repaired;

h.      Time spent driving to and from Defendants' office location for van maintenance;

i.      Waiting to be picked up following a traffic accident;

j.      Waiting to be picked up after the van breaks down;

k.      Time spent driving to a patient's house who cancelled the pick-up;

l.      Time spent "on call" between patient drop-offs and pickups; and

m.      Time spent in training.

**C.**      **Defendants Willfully Violated the Minimum Wage Provision of the FLSA**

73.      Throughout the FLSA Recovery Period, Defendants subjected Plaintiffs and Collective Class Members to violations of the minimum wage provision of the FLSA.

74.      By working Plaintiffs and Collective Class Members "off-the-clock" and without pay for the compensable work activities set forth in paragraph 72 a – m above, Defendants often failed to pay the Plaintiffs and Collective Class Members an average hourly wage for the week equal to or greater than the federally mandated minimum wage of $7.25 an hour.

75.      Defendants also subjected Collective Class Members to "fines" for a variety of reasons such as being late picking up or dropping off patients at appointments, damage to the vans,

and even parking the vans in the wrong place at the office. These "fines" often dropped Collective Class Members below an average hourly wage for the week equal to or greater than the federally mandated minimum wage of $7.25 an hour.

76. Plaintiff Grainger's experiences while working for Defendants are typical of the experiences of Collective Class Members.

77. In the fall of 2016, Grainger drove a patient from Russellville, Kentucky, to Vanderbilt Children's Hospital in Nashville, Tennessee, for a medical appointment. After waiting for approximately four-and-a-half hours, Grainger was informed that the patient was being kept overnight. Defendants did not compensate Grainer for the time he spent waiting, or for the time spent driving from Nashville, Tennessee to Defendants' office. Defendants' failure to pay Grainger for waiting and drive time on this occasion, and several of the other circumstances set forth in paragraph 72 a-m above, often dropped his average hourly wage to less than $7.25 an hour.

78. When Grainger quit in November of 2016, Defendants withheld his final paycheck in the approximate amount of $576, claiming that they were entitled to do so because Grainger failed to give two weeks' notice and because of alleged damage to his assigned van. Even assuming the truth of these claims, Defendants' actions violate the FLSA which requires payment of federally mandated minimum (and overtime) wages "free and clear" without offsets.

**D.     Defendants Willfully Violated the Overtime Provision of the FLSA**

79. Throughout their employment, Defendants subjected Plaintiffs and Collective Class Members to violations of the overtime provision of the FLSA.

80.     Throughout the FLSA Recovery Period, Defendants classified all persons who worked for them as van drivers as "independent contractors" instead of as "employees" who were entitled to overtime pay at a rate of not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek.

81.     During the FLSA Recovery Period, Defendants misclassified all van drivers as "independent contractors" as a willful and intentional scheme to deprive Plaintiffs and Collective Class Members of the lawful overtime pay required by the FLSA whenever they worked in excess of forty (40) hours in a workweek.

82.     During the FLSA Recovery Period, many Collective Class Members frequently worked ten (10) or more hours a day, and more than fifty (50) hours a week.

83.     Plaintiff McCoy's experiences while working for Defendants are typical of the experiences of Collective Class Members.

84.     During the last two (2) weeks of November, 2016, McCoy worked approximately one hundred and five (105) hours.  Despite working approximately twenty-five hours (25) of overtime during this period, Defendants paid McCoy "straight-time" for these overtime hours, rather than time and one-half her regular rate of pay.

**E.      Defendants Use their "Misclassification Scheme" to Avoid Compliance with Kentucky Workers' Compensation Laws and Federal and State Tax Laws**

85.     Defendants willfully and intentionally misclassified Plaintiffs and all Class Members as "independent contractors" in order to avoid compliance with Kentucky Revised Section ("KRS") 342.610, which mandates that statutory employers such as Defendants provide workers' compensation insurance coverage for their employees.

14

86. Instead of providing workers' compensation coverage as mandated by Kentucky law, Defendants required all Class Members to purchase "occupational accident insurance" as if the Class Members were self-employed, and automatically deducted approximately $54.50 from their pay in "premiums" each payday on the 15th and last day of each month.

87. Instead of paying these "premiums" Defendants deducted from Class Members' pay to the "occupational accident" insurer, Defendants often pocketed and converted the premiums for their own use.

88. On numerous occasions, Class Members have called the insurer which supposedly carried the "occupational accident insurance" on them only to find that there was no such coverage because Defendants did not transmit the premiums Defendants automatically deducted from Class Members' pay to the insurer.

89. Defendants deducted approximately $327.00 from McCoy's pay from July of 2016 through October of 2016, but did not transfer these premiums to the insurance carrier in order to obtain "occupational accident insurance" on McCoy.

90. Plaintiff McCoy's experiences while working for Defendants are typical of the experiences of Class Members.

## VI.     COLLECTIVE ACTION ALLEGATIONS

91. Plaintiffs reassert and re-allege the allegations set forth above.

92. The FLSA regulates the payment of wages for time worked, including minimum and overtime wages, by employees who are engaged in interstate commerce or engaged in the production

of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. §207(a)(1).

93.    Plaintiffs bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), which provides, in pertinent part, as follows:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

94.    Plaintiffs assert their FLSA claims pursuant to 29 U.S.C. §216(b) as a collective action on behalf of the following Collective Class Members:

> All current and former workers who worked for Defendants at any time as van drivers three (3) years prior to the filing of the Complaint through the present (the "FLSA Recovery Period").

95.    Section 13 of the FLSA, codified at 29 U.S.C. §213, permits employers to categorize certain employees as "exempt."  None of the FLSA exemptions apply to Plaintiffs or Collective Class Members while working as van drivers for Defendants.

96.    The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees for all hours worked, including at a rate equal to or greater than the minimum wage of $7.25, and overtime for all hours worked at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per in a workweek.

97.    The FLSA requires covered employers, such as Defendants, to make, keep, and preserve accurate records of the hours worked by non-exempt employees, such as Plaintiffs and the Collective Class Members.

98.     Plaintiffs and the Collective Class Members are and were victims of Defendants'
widespread, repeated, systematic, illegal and uniform compensation policies, practices and/or
procedures designed to evade the requirements of the FLSA, including the FLSA's minimum wage
and overtime requirements.

99.     Defendants have willfully engaged in a pattern of violating the FLSA, 29 U.S.C. §201
*et seq.*, as described in this Collective and Class Action Complaint by knowingly failing to pay
Plaintiffs and the Collective Class Members for all hours worked, including minimum wage and
overtime compensation.

100.     Defendants' conduct constitutes willful violations of the FLSA within the meaning of
29 U.S.C. §255.

101.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs
and the Collective Class Members.  Plaintiffs are similarly situated to the Collective Class Members,
and as such, notice should be sent to the Collective Class Members.  There are numerous similarly
situated current and former Collective Class Members who have suffered from Defendants' common
and uniform policies, practices and/or procedures of not paying van drivers for all hours worked,
including minimum wage and overtime pay, and who would benefit from the issuance of a Court-
supervised notice of the present lawsuit and the opportunity to join in this action.  Those similarly
situated employees are known to Defendants, and are readily identifiable through Defendants'
records.

102.     Plaintiffs and Collective Class Members are entitled to damages equal to pay for all
hours worked, including minimum wage and overtime hours worked at the overtime premium rate

mandated by the FLSA, during the FLSA Recovery Period, because Defendants acted willfully and knew, or showed reckless disregard for whether, their conduct was prohibited by the FLSA.

103.   Throughout the FLSA Recovery Period Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions as alleged in the preceding paragraphs were not a violation of the FLSA. Plaintiffs and the Collective Class Members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation, including minimum wage and overtime compensation, as permitted by §16(b) of the FLSA. *See* 29 U.S.C. §216(b).

104.   As a result of the aforesaid violations of the FLSA's provisions, minimum wages and overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and Collective Class Members throughout the FLSA Recovery Period.  Accordingly, Defendants are liable for unpaid wages under §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), together with an additional amount as liquidated damages, as well as pre- and post-judgment interest, reasonable attorney's fees, and costs of this action.

## VII.    CLASS ACTION FOR VIOLATIONS UNDER KENTUCKY STATE LAW

### A.    Class Action for Breach of Employment Contract

105.   Plaintiffs reassert and re-allege the allegations set forth above.

106.   Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class of individuals:

> All current and former workers who worked for Defendants at any time as van drivers since five (5) years prior to the filing of this Complaint through the present. ("Contract Breach Recovery Period").

107. Plaintiffs are members of the Class Action Class they seek to represent.

108. The Class Action Class is sufficiently numerous that joinder of all members is impractical, satisfying Federal Rule of Civil Procedure 23(a)(1). There are dozens of Class Members who worked for Defendants during the Contract Breach Recovery Period.

109. All Class Members share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all Class Members share the questions of: (1) whether Defendants misclassified them as "independent contractors;" (2) whether Defendants had a policy and practice of paying Class Members only for time spent transporting patients; (3) whether and to what extent Defendants did not pay for all hours worked; and (4) whether Defendants' actions constituted a breach of contract.

110. Plaintiffs' claims are typical of the claims of the Class Action Class, thus satisfying Federal Rule of Civil Procedure 23(a)(3). Defendants' failure to pay for all time worked was not the result of any Plaintiff-specific circumstances. Rather, it arose from Defendants' common policies and practices of misclassifying all Class Members as "independent contractors" and paying Class Members only for time spent actually transporting patients as opposed to paying for all hours worked.

111. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Further, Plaintiffs have retained competent counsel experienced in representing classes of employees against their employers related to their employers' failure to pay them properly under the law, thus satisfying Federal Rule of Civil Procedure 23(a)(4).

112.     By consistently failing to pay van drivers for all hours worked, Defendants have acted on grounds that apply generally to all Class Members, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole. Accordingly, Plaintiffs are entitled to pursue their state law claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2).

113.     By uniformly misclassifying van drivers as "independent contractors" and consistently failing to pay them for all hours worked, Defendants have created a scenario where questions of law and fact common to Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs are entitled to pursue their state law claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

**B.     Class Action for Unjust Enrichment and Conversion**

114.     Plaintiffs reassert and re-allege the allegations set forth above.

115.     Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class of individuals:

> All current and former workers who worked for Defendants at any time as van drivers since five (5) years prior to the filing of this Complaint through the present and who had premiums deducted from their pay for "occupational accident insurance." ("Unjust Enrichment/Conversion Recovery Period").

116.     Plaintiffs are members of the Class Action Class they seek to represent.

117.     The Class Action Class is sufficiently numerous that joinder of all Class Members is impractical, satisfying Federal Rule of Civil Procedure 23(a)(1). There are dozens of Class Members

during the Unjust Enrichment/Conversion Recovery Period whose pay was docked by Defendants for "occupational accident insurance."

118. All members of the Class Action Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2). Namely, all Class Members share the questions of: (1) whether Defendants misclassified them as "independent contractors;" (2) whether Defendants are statutory employers; (3) whether Kentucky law requires Defendants to provide workers' compensation coverage at their cost; (4) whether Defendants had a policy and practice of deducting premiums from the pay of all Class Members for so-called "occupational accident insurance;" (5) whether Defendants' actions constituted conversion and/or unjust enrichment.

119. Plaintiffs' claims are typical of the claims of the Class Action Class, thus satisfying Federal Rule of Civil Procedure 23(a)(3). Defendants' conduct was not the result of any Plaintiff-specific circumstances. Rather, it arose from Defendants' uniform policy and practice of deducting premiums from the pay of all Class Members for so-called "occupational accident insurance."

120. Plaintiffs will fairly and adequately represent and protect the interests of the Class Action Class. Further, Plaintiffs have retained competent counsel experienced in representing classes of employees against their employers related to their employers' failure to pay them properly under the law, thus satisfying Federal Rule of Civil Procedure 23(a)(4).

121. By consistently and uniformly deducting premiums from the pay of all Class Members for so-called "occupational accident insurance" each pay period, Defendants have acted on grounds that apply generally to all Class Members, such that final injunctive relief and corresponding

declaratory relief is appropriate respecting the Class as a whole. Accordingly, Plaintiffs are entitled to pursue their state law claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2).

122. By uniformly misclassifying van drivers as "independent contractors" and docking their pay for "occupational accident insurance" as if they were self-employed, Defendants have created a scenario where questions of law and fact common to Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs are entitled to pursue their state law claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

## VIII. COUNT ONE – VIOLATIONS OF THE FLSA

123. Plaintiffs reassert and re-allege the allegations set forth above.

124. Plaintiffs bring this claim on behalf of themselves and all those similarly situated pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b).

125. Throughout the FLSA Class Period, Plaintiffs have been employees entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

126. Defendants are employers covered by the FLSA.

127. Plaintiffs and all similarly-situated employees are or were victims of a common, company-wide compensation policy that fails to record and compensate all time worked by van drivers.

128. The FLSA entitles employees to compensation for every hour worked in a workweek at a rate of not less than $7.25. See 29 U.S.C. §206(b).

129.     In many workweeks in which Plaintiffs and the Collective Class Members worked less than forty (40) hours, Defendants did not pay them at a rate of more than $7.25.

130.     Some of the uncompensated time at issue is time worked in excess of forty (40) hours per week.

131.     The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for hours worked over forty (40) in a week.  29 U.S.C. §207.

132.     Defendants have violated the FLSA by failing to compensate Plaintiffs and the Collective Class Members for all hours worked at a rate of not less than $7.25 in numerous workweeks in which they worked less than forty (40) hours.

133.     Defendants have violated the FLSA by failing to compensate Plaintiffs and the Collective Class Members "not less than one and one-half times" their regular rate of pay for hours worked over forty (40) in a week.

134.     Defendants did not act in good faith or with reasonable grounds to believe that their actions and omissions in misclassifying Plaintiffs and the Collective Class Members as "independent contractors" and in failing to pay minimum and overtime wages were not a violation of the FLSA, entitling Plaintiffs and the Collective Class Members to an award of liquidated damages.

135.     Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

### IX.     COUNT TWO – BREACH OF CONTRACT

136.     Plaintiffs reassert and re-allege the allegations set forth above.

137.     Plaintiffs bring this claim on behalf of all Class Members employed during the Contract Breach Recovery Period.

138.     Plaintiffs and the Class Members uniformly entered into employment agreements with Defendants whereby they agreed to perform work for Defendants in exchange for being compensated at a set hourly rate for all hours worked.

139.     The agreements were made between parties capable of contracting and contained mutual obligations and valid consideration.

140.     Plaintiffs and the Class Members have performed all conditions precedent, if any, required of them under their agreements with Defendants, since they performed the work for which Defendants promised to pay them.

141.     Defendants failed and refused to perform their obligations in accordance with the terms and conditions of the agreements by failing to pay Plaintiffs and the Class Members for all hours worked on behalf of Defendants.

142.     Plaintiffs and the Class Members have suffered damages as a result of the Defendants' breach of their agreement.

## X.     COUNT THREE – UNJUST ENRICHMENT

143.     Plaintiffs reassert and re-allege the allegations set forth above.

144.     Plaintiffs bring this claim on behalf of all Class Members employed during the Unjust Enrichment/Conversion Recovery Period.

145.     Throughout the Unjust Enrichment/Conversion Recovery Period, Defendants misclassified Plaintiffs and Class Members as "independent contractors," when in fact they were employees of the Defendants.

146.     Defendants were statutory employers of Plaintiffs and all Class Members under KRS 342.610 throughout the Unjust Enrichment/Conversion Recovery Period.

147.     As statutory employers, Kentucky law required that Defendants provide workers' compensation coverage to Plaintiffs and the Class Members throughout the Unjust Enrichment/Conversion Recovery Period.

148.     Instead of paying the premiums and providing workers' compensation coverage as they were legally required to do, Defendants wrongfully and illegally deducted premiums from the pay of Plaintiffs and all Class Members for so-called "occupational accident insurance" throughout the Unjust Enrichment/Conversion Recovery Period.

149.     Instead of paying these "premiums" to the insurer as it should have, Defendants often pocketed the premiums they deducted from Class Members' paychecks for their own use and benefit.

150.     Because of the wrongful activities described above, Defendants have received the benefit of requiring Plaintiffs and the Class Members' to fund Defendants' obligation to provide workers' compensation coverage as a statutory employer through mandatory deductions from their paychecks, and have therefore received money belonging to the Plaintiffs and the Class Members.

151.     Defendants were aware of and clearly appreciated the benefit that Plaintiffs and the Class Members conferred on them, since Defendants required and made the payroll deductions from Class Members' paychecks.

152.     Defendants have been unjustly enriched as a result of docking the Plaintiffs' and Class Members' paychecks to fund Defendants' statutory obligation to provide and pay for workers' compensation coverage.  It would be unjust to allow Defendants to keep the money it has deducted from Plaintiffs' and Class Members' earned wages to fund Defendants' legal obligations.

153.     Defendants have been unjustly enriched and have obtained a substantial financial windfall, which would have not occurred absent Defendants' wrongful conduct as alleged above. Plaintiffs and the Class Members demand that Defendants make restitution and disgorge all monies they have deducted from the pay of Plaintiffs and all Class Members for "occupational accident insurance" throughout the Unjust Enrichment/Conversion Recovery Period.

## XI.     COUNT FOUR – CONVERSION

154.     Plaintiffs reassert and re-allege the allegations set forth above.

155.     Plaintiffs bring this claim on behalf of all Class Members employed during the Unjust Enrichment/Conversion Recovery Period.

156.     Throughout the Unjust Enrichment/Conversion Recovery Period, Defendants misclassified Plaintiffs and Class Members as "independent contractors," when in fact they were employees of the Defendants.

157.     Defendants were statutory employers of Plaintiffs and all Class Members under KRS 342.610 throughout the Unjust Enrichment/Conversion Recovery Period.

158.     As statutory employers, Kentucky law required that Defendants provide workers' compensation coverage to Plaintiffs and the Class Members at all times throughout the Unjust Enrichment/Conversion Recovery Period.

26

159. Instead of paying the premiums themselves as they were legally required to do, Defendants wrongfully and illegally deducted premiums from the pay of Plaintiffs and all Class Members for so-called "occupational accident insurance" throughout the Unjust Enrichment/Conversion Recovery Period.

160. Instead of paying these "premiums" to the insurer, Defendants often pocketed the premiums they deducted from Class Members' paychecks for their own use and benefit.

161. Defendants have interfered with the rights of Plaintiffs and Class Members to their personal property consisting of wages which Defendants wrongfully deducted from Class Members' paychecks to fund Defendants' statutory obligations.

162. Defendants have retained and used the wages of Plaintiffs and Class Members for Defendants' own benefit without their informed consent and permission by mandating that all van drivers fund Defendants' statutory obligations with their wages.

163. The converted property, consisting of Plaintiffs' and Class Members' wages, was and is personal in nature.

164. Defendants' conduct has, and continues, to damage Plaintiffs and all Class Members.

165. Plaintiffs and Class Members have a superior right to possession of the wages Defendants wrongfully deducted from their pay.

166. Plaintiffs and Class Members are entitled to restitution for their full amount of wages converted for the benefit and use of Defendants, as well as punitive damages, costs and expenses.

## XII.    COUNT FIVE – DECLARATORY JUDGMENT

167. Plaintiffs reassert and re-allege the allegations set forth above.

168.     Plaintiffs bring this claim on behalf of themselves and the Collective Class Members and all Class Action Class Members pursuant to 28 U.S.C. §2201.

169.     At all times material to the allegations herein, Plaintiffs, Collective Class Members and Class Action Class Members have been employees entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*., and Kentucky law, namely KRS 342.610.

170.     Defendants are and have been at all relevant times employers covered by the FLSA and Kentucky law, namely KRS 342.610.

171.     Plaintiffs, Collective Class Members and all Class Action Class Members are and/or were victims of a common, uniform illegal scheme perpetrated by Defendants to intentionally misclassify van drivers as "independent contractors" in order to: a) deprive them of their lawful minimum wages and overtime pay as required by the FLSA; b) deprive them of workers' compensation protection funded and provided by the employer as mandated by Kentucky law; and c) avoid payment of Social Security and Medicare taxes mandated by the Federal Insurance Contribution Act ("FICA"), as well as federal ("FUTA") and state ("SUTA") unemployment insurance contributions mandated by federal and state laws.

172.     There is an actual controversy regarding whether the Defendants misclassified Plaintiffs, the Collective Class Members and Class Action Class Members in order to achieve the illegal purposes set forth above.

173.     Accordingly, Plaintiffs, the Collective Class Members and Class Action Class Members are entitled to a declaratory judgment that Defendants have misclassified them as

"independent contractors," and that they are instead statutory employers under the FLSA and federal and state law. 28 U.S.C. §2201.

## XIII.   PRAYER FOR RELIEF

174.   Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Members of the Collective Class and Class Action Class Members, respectfully request that this Court grant the following relief:

a. Entry of an order designating this action as a collective action on behalf of Collective Class Members and directing prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the FLSA Collective Action Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consents to join this lawsuit pursuant to 29 U.S.C. §216(b);

b. Entry of an order certifying this action as a class action under Fed. R. Civ. P. 23;

c. An order designating Plaintiffs as representatives of the Collective Action Class and the Class Action Classes;

d. An order designating James Bewley Law PLLC and Dickinson Wright PLLC as counsel for the Collective Action Class and the Class Action Classes;

e. An award of unpaid wages, including all minimum wage and overtime compensation, due under the FLSA;

f. An award of liquidated damages and/or penalties as a result of the Defendants' failure to exercise good faith as permitted by §16(b) of the FLSA;

g. An order requiring Defendants to disgorge monies deducted from Plaintiffs' and Class Action Class Members' pay as a result of their wrongful conduct and ordering them to make restitution as a result of Defendants' unjust enrichment and conversion;

h. An award of compensatory and punitive damages;

i. An award of prejudgment and post-judgment interest;

29

j.       Declaratory and injunctive relief, prohibiting Defendants from continuing to engage in the unlawful policies, practices and procedures as alleged above;

k.       An award of costs and expenses of this action, together with reasonable attorneys' fees; and

l.       Such other and further relief as this Court deems just and proper.

m.       Plaintiffs further demand a jury to try the issues when joined.

Respectfully submitted,

JAMES BEWLEY LAW PLLC
By: /s/ Jenni Bryant_____
Jimmy Bewley, TN #026788
Jenni Bryant, TN #034148
300 10th Ave South
Nashville, Tennessee 37203
Tel: 615-988-9411
jbewley@JBLfirm.com
jbryant@JBLfirm.com

DICKINSON WRIGHT PLLC

By: /s/ Emma R. Wolfe_____
Emma R. Wolfe, KY #94536
300 W. Vine Street, Suite 1700
Lexington, KY  40507
Tel. 859-899-8705
ewolfe@dickinsonwright.com

DICKINSON WRIGHT PLLC

By: /s/ Peter F. Klett
Peter F. Klett, TN Bar #12688
Joshua Burgener, TN Bar #29077
R. Cameron Caldwell, TN Bar #29084
Fifth Third Center
424 Church Street, Suite 1401
Nashville, TN 37219-2392
Tel.:   615.244.6538
pklett@dickinsonwright.com
jburgener@dickinsonwright.com
ccaldwell@dickinsonwright.com


*Attorneys for Plaintiffs, the Collective Action Class and the Class Action Classes*